## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GREGORY JOHNSON,
    *Plaintiff*,

    v.                          Case No. 3:24-CV-728 (KAD)

STATE OF CONNECTICUT COMMISSION
ON HUMAN RIGHTS AND OPPORTUNITIES,
et al.,
    *Defendants*.

## <u>INITIAL REVIEW ORDER</u>

*Pro se* plaintiff Gregory Johnson (inmate #128262), a sentenced inmate currently incarcerated within the Connecticut Department of Correction ("DOC") at MacDougall-Walker Correctional Institution ("MWCI"), originally filed this action pursuant to 42 U.S.C. § 1983 against the Connecticut Commission on Human Rights and Opportunities ("CHRO"), CHRO Legal Investigator Cheyenne Clark, DOC Attorney Jennifer Lepore, CHRO Intake Officer Mark Shepherd, the U.S. Department of Justice Civil Rights Division (Local Office) ("DOJ"), U.S. Attorney Vanessa Roberts Avery, DOJ Attorney Anastasia King, DOJ Attorney Sean Patel, Disability Rights Connecticut ("DRCT"), DRCT Executive Director Deborah Dorfman, DRCT Attorney Stephen Byers, and Governor Ned Lamont. After initial review, the Court dismissed his Complaint as not plausible under 28 U.S.C. § 1915a(b). Initial Review Order ("IRO"), ECF No. 11. The Court also afforded Plaintiff the opportunity to file an amended complaint to correct the deficiencies of his claims that were dismissed without prejudice, as identified in the Court's initial review order. *Id.* at 18–19.

On January 22, 2025, Plaintiff filed an amended complaint against the DOC, Commissioner Angel Quiros, DOC ADA Coordinator Colleen Gallagher, DOC Attorney Lepore, the U.S. Department of Justice Civil Rights Division (Local Office), U.S. Attorney Roberts Avery, DOJ

Attorneys King and Patel, the DRCT, DRCT Director Dorfman, and DRCT Attorney Byers.[1]  Am. Compl., ECF No. 22.  Plaintiff requests damages and unspecified injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The Court has thoroughly reviewed all factual allegations in the Amended Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

**FACTS**

The narrative in the Amended Complaint is sometimes difficult to follow, but the Court summarizes Plaintiff's allegations as follows.

<u>Conditions and Mistreatment</u>

Plaintiff claims that, while he was housed at MWCI and Corrigan-Radgowski Correctional Center ("Corrigan"), he was sexually assaulted by DOC officials; denied assistive devices, equipment, and reasonable accommodations; deprived of medical treatment for his physical and mental health conditions; and deprived of a special diet for his religious and medical needs.  He claims DOC staff has made misrepresentations about his mental health and disability issues and its provision for reasonable accommodation.

---

[1] Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the case caption. *See* Fed. R. Civ. P 10(a) ("The title of the complaint must name all the parties . . . .").  Accordingly, the Court considers the plausibility of claims against only the individuals named in the case caption.  *See Shariff v. United States*, 689 F. App'x 18, 19 (2d Cir. 2017) (noting that when dismissing original complaint, district court correctly instructed plaintiff that he must identify all defendants in the case caption); *Thompson v. Hartford Cty. Med. Dep't*, No. 3:19-CV-1983 (VAB), 2020 WL 2198096, at *3 (D. Conn. May 6, 2020).

Plaintiff has been diagnosed as suffering from numerous medical conditions, including glaucoma, urinary retention, hemorrhoid, bowel incontinence, nerve issues, enlarged prostate, shift bladder, acute kidney failure, severe migraines, post-traumatic stress syndrome, depression, anxiety and hallucination. He maintains that he wears a Foley catheter to assist him emptying his bladder.

Plaintiff is allegedly a "qualified person" with a disability under the Americans with Disability Act (ADA) and has used equipment and assistive devices since 2017. DOC Mental Health and ADA Staff, including ADA Coordinator Gallagher, have refused to provide him with equipment and assistive devices (for toileting, showering, moving, seeing, and general assistance with his transportation), and he has been housed in non-ADA-compliant cells or rooms, including in the Restrictive Housing Unit ("RHU"), between 2020 and 2024. He has been denied protective custody placement due to the inadequate housing units for inmates with disabilities and inmates who need to use wheelchairs. Commissioner Quiros allegedly transferred him from one non-ADA-compliant facility to another.

Plaintiff is Jewish. In July 2017, DOC and Plaintiff executed an agreement requiring DOC to provide to him with a diet that met his religious and medical needs. Plaintiff alleges that he needs a diet that is appropriate for his high blood pressure, nutrient deficiencies, and hemorrhoids. The DOC dietician and religious coordinator were both aware of Plaintiff dietary needs. In June 2024, prison officials discontinued the diet required under the 2017 agreement. Instead, DOC officials provided a second diet issued by a "specialist," but this diet was discontinued in July 2024. Several letters were sent to Commissioner Quiros about the discontinuation of Plaintiff's diet that met his religious and medical needs. He has continuously been denied oranges, grapes, and other foods that he needs for religious reasons. No responsive action was taken to provide

him an appropriate "kosher" or "special" diet.  However, DOC's Director of Religious Services did provide another Jewish inmate, Daniel Greer, with a special diet to meet his religious needs. Plaintiff has allegedly been treated differently from inmates of other religions who are provided with special food to meet their religious needs.  He claims that DOC is not providing him with an adequate kosher diet, and that he has had to eat non-kosher food on a regular basis since 2023.

In addition, while Plaintiff was housed in the RHU and medical units at Corrigan and MWCI, he was denied several religious articles necessary for his religious practice.

He asserts that DOC denied him access to necessary medications for his disabilities, denied him mental health treatment, and discontinued his special diet in retaliation for his complaints.

At some point, Plaintiff was placed in the medical infirmary at Corrigan, where he was abused and discriminated against by Caucasian medical staff and sexually assaulted by two unnamed prison guards on November 23, 2020.

Between November 2020 and November/December 2024, Plaintiff was recommended by specialists to have surgery, adhere to a therapeutic diet, and other treatment to remedy his disabilities.  He claims the DOC medical staff denied him the treatment recommended by specialists and minimized his disabilities through false reporting about his diagnoses.

<u>Complaints</u>

Plaintiff allegedly filed several complaints about the sexual assault and other violations with the DOJ's Office of Civil Rights.

Plaintiff has also filed several complaints with DRCT concerning his disability and mental health issues.  Between 2020 and 2022, Plaintiff signed two retainer agreements and agreements for the release of medical and nonmedical records with DRCT.  In the agreement, DRCT agreed

to advocate for Plaintiff concerning his disabilities and mental health issues.  DRCT Attorney Rachel Mirsky was assigned to represent Plaintiff.

In August 2022, while Plaintiff was at MWCI, Attorneys Mirsky and Lepore discussed the ADA noncompliance at MWCI.  Lepore investigated the MWCI conditions and met with ADA Coordinator Gallagher.  After negotiations, Plaintiff was provided with certain equipment, but the ADA noncompliance continued.  Plaintiff later had to file for an injunction in state court to have the CHRO complete the hearing process.

After Plaintiff was transferred to Corrigan in June 2023, his property was held by DOC employees, which stopped him from litigating his complaints and practicing his religion.  He was not able to file an appeal in his CHRO action because prison officials failed to provide him the appeal forms.  In addition, his legal mail was destroyed by the unit manager.  Plaintiff filed complaints with the DOJ and with the U.S. Attorney's Office (under then-U.S. Attorney Roberts Avery) concerning violations of his rights due to discrimination and ADA violations between 2020 and 2024.  Plaintiff received a response from the U.S. Attorney's Office stating that it would not conduct any investigation.

Between April and August 2023, Plaintiff wrote to Roberts Avery, King, and Patel about alleged civil right violations.  He later received a letter from Attorney Mirsky stating that she had received a request from the U.S. Attorney's Office to clarify the parameters of her retainer and legal representation for Plaintiff.  Attorney Mirsky sent Plaintiff a letter requesting that he sign a release so that she could speak with the New Haven DOJ office; the letter also explained that DOC may have him transferred to another state to avoid his lawsuits.

Defendants Roberts Avery, King, and Patel allegedly promised to investigate the civil rights violations asserted by Plaintiff, but the U.S. Attorney's Office later decided not to pursue

criminal investigations against DOC officials.  Attorney Mirsky made the DOC officials, including Lepore and Gallagher, aware of the ADA noncompliance, but they allegedly disregarded the ADA's requirements.

After Plaintiff was transferred to Corrigan in June 2023, Attorney Mirsky's representation of Plaintiff was discontinued, and DRCT Director Dorfman refused to assign him new counsel. After Plaintiff informed Attorney Byers about the ADA violations at Corrigan, Byers indicated that he would review Plaintiff's files and talk to Dorfman about how to proceed, but he never got back to him.  Plaintiff later received instructions on how to appeal DRCT's decision to discontinue his representation, but his efforts to obtain representation from DRCT for his civil rights claims were not successful.

Between June 2023 and January 2024, Plaintiff wrote to the DOJ and discussed his civil rights violation arising from the DOC's failure to accommodate his special diet.  He advised DOJ staff that his diet needs had been denied as retaliation for his having filed legal complaints. Plaintiff thus claims that the DOJ and its staff, including Roberts Avery, King, and Patel, were aware of his civil rights violations arising from his diet deprivations, but they failed to take action to address the violations of his federal civil rights.

Plaintiff filed a CHRO complaint about his ADA issues, discrimination, and his allegation that DOC medical personnel (Dr. Gerard Gagne) decided to discontinue his psychotropic medications because of his alleged personal dislike of Plaintiff.  When asked if she would represent Plaintiff for this CHRO action, Attorney Mirsky indicated that Dorfman and Byers would not permit her to do so.  He also learned that Dorfman and Byers were in discussion with the CHRO regarding DRCT staff ADA violations and discrimination.

Plaintiff claims that the failure of DRCT and its staff to advocate for his ADA and mental health issues resulted in his deprivation of assistive equipment, continued inadequate mental health treatment, and physical and emotional pain and injury.

**DISCUSSION**

The Court incorporates the standards articulated in its prior IRO and does not restate them here except as necessary.

The Court previously dismissed Plaintiff's claims of constitutional violations on the following grounds: (1) the DOJ was not proper defendant for claims under either 42 U.S.C. § 1983 or *Bivens*; (2) his claims against DOJ employees Roberts Avery, King, and Patel were not cognizable under *Bivens*, and these Defendants were entitled to prosecutorial immunity; (3) his challenges to Attorney Lepore's conduct as an advocate for DOC were barred by absolute immunity from liability; and (4) the DRCT and its employees Dorfman and Byers were not plausibly alleged to be state actors. IRO at 8–15. In addition, regarding Plaintiff's claims under the ADA and Rehabilitation Act ("RA"), the Court previously explained that Plaintiff could not pursue claims under ADA and RA against any individual Defendants in their individual capacities and determined that his complaint had not alleged any plausible ADA or RA violation.

The Court's prior IRO only allowed Plaintiff to replead claims against the Defendants that were dismissed *without prejudice*: that is, § 1983 claims against DRCT, Director Dorfman, and Attorney Byers (the "DRCT Defendants"); and ADA and RA claims against DRCT, DOJ, and CHRO. *Id.* at 15, 18. Thus, the Court will not take up his effort to replead claims against Defendants that were dismissed with prejudice in the prior IRO. Claims against those Defendants—which include DOC Attorney Lepore, former U.S. Attorney Roberts Avery, DOJ Attorney King, and DOJ Attorney Patel—are dismissed with prejudice again. Below, the Court

will only address the claims asserted against the DRCT Defendants, the DOJ, and the CHRO, as well as the DOC, Commissioner Quiros, and ADA Coordinator Gallagher, who are newly added Defendants.

The Court construes Plaintiff's Amended Complaint to assert violations of his federal and constitutional rights due to deliberate indifference to his medical needs and or health and safety; violation of his right to free exercise of religion; equal protection rights; First Amendment retaliation; and violation of his disability rights under the ADA and RA.

### Civil Rights Claims under 42 U.S.C. § 1983

Plaintiff reasserts claims of constitutional violation under § 1983 against the DRCT, and its employees Dorfman and Byers.  As Plaintiff has not corrected the deficiencies of such claims as identified by this Court on its prior initial review—to wit, by asserting a factual basis to conclude that these Defendants were acting under color of state law—the Court again dismisses his claims under § 1983 against the DRCT, Dorfman, and Byers as not plausible.  *See* IRO at 15.

The Court next considers whether Plaintiff has alleged any plausible claims under § 1983 against DOC Commissioner Quiros and ADA Coordinator Gallagher.[2]  The Court first reviews whether Plaintiff may proceed on a § 1983 claim for damages against either Quiros and/or Gallagher in their individual capacities.  To do so, Plaintiff must allege facts that establish the personal involvement of Quiros and/or Gallagher in the alleged constitutional violations.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); *Tangreti v. Bachmann*, 983 F.3d 609, 618–19 (2d Cir. 2020) (noting that a plaintiff must plead and prove "that

---

[2] Plaintiff cannot proceed against the State of Connecticut or DOC under 42 U.S.C. § 1983.  This is so because neither the State nor DOC, a state agency, is considered to be a person subject to suit under 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

each Government-official defendant, through the official's own individual actions, has violated the Constitution").[3]

<u>Eighth Amendment Deliberate Indifference</u>

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness—actions that evince a conscious disregard of a substantial risk of serious harm. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would

---

[3] Plaintiff's Amended Complaint refers to constitutional violations arising from his inability to access the courts and his sexual assault by DOC officers. But Plaintiff has not alleged any facts to suggest that either Quiros or Gallagher (or other named Defendant) had any involvement in or connection with these violations. *Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *5 (D. Conn. May 8, 2020) (dismissing individual and official capacity claims against defendants where complaint established no connection between defendants and alleged constitutional violations).

find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

"[A]n inmate seeking to establish an Eighth Amendment violation for failure to protect or deliberate indifference to safety must prove (1) that [the prisoner] is incarcerated under conditions posing a substantial risk of serious harm, and (2) that the prison official had a sufficiently culpable state of mind, which in prison-conditions cases is one of deliberate indifference to inmate health or safety." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (per curiam).

In both instances, the prisoner must allege facts to suggest that a defendant acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. A plaintiff must allege that a defendant was aware of a substantial risk that he would be seriously harmed if defendant did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (per curiam); *Collazo*, 656 F.3d at 135. But "[o]fficials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138.

### Commissioner Quiros

The Court construes Plaintiff's allegations most broadly to suggest that Quiros was aware of the discontinuation of his special diet, which was the subject of a prior agreement between Plaintiff and DOC. The Court will permit Plaintiff to proceed for damages against Commissioner Quiros on an Eighth Amendment claim of deliberate indifference to his need for a special diet for his medical conditions of high blood pressure, nutrient deficiencies, and hemorrhoids.

10

With respect to his claims concerning his inadequate treatment for his physical medical conditions and mental health issues, Plaintiff has not alleged plausible Eighth Amendment claims. Even if he has conditions that satisfy the Eighth Amendment's objective element, Plaintiff has not alleged facts to suggest that Commissioner Quiros was aware of his serious risk of harm due to inadequate medical or mental health treatment but nonetheless ignored Plaintiff's risk of harm and took no remedial measures. *See Tangreti*, 983 F.3d at 620 (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"). Even if Plaintiff sent Quiros letters about his medical deprivations, a supervisory official's receipt of a communication, without more, is generally insufficient to establish the official's personal involvement in a § 1983 constitutional claim. *See Adams v. Annucci*, No. 17-CV-3794, 2023 WL 2664301, at *11 (S.D.N.Y. Mar. 28, 2023) (stating receipt of an inmate's letter, by itself, is not personal involvement); *Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *11–12 (S.D.N.Y. Feb. 14, 2018) (explaining that Acting Commissioner's failure to respond to the plaintiff's letter "without more, does not plausibly allege his personal involvement" in a constitutional violation) (collecting cases), *abrogated on other grounds by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023); *see also McCrary v. Marks*, 836 F. App'x 73, 74 (2d Cir. 2021) (affirming summary judgment in favor of supervisor in First Amendment claim because "the most he has alleged is that [the supervisor] received his letter and directed someone at the TVPA to respond to it. This is clearly not enough to state claim against [the supervisor]"). Likewise, a conclusory assertion about information that a defendant "should know" is insufficient to establish personal involvement. *Monroe v. County of Rockland*, No. 21-CV-5244 (VB), 2021 WL 4084149, at *1 (S.D.N.Y. Sept. 8, 2021) (conclusory allegation about what a defendant should know was insufficient to support claim of defendant's personal

involvement).  Accordingly, the Court concludes that Plaintiff's Amended Complaint fails to allege facts to support a claim that Commissioner Quiros acted with deliberate indifference to his substantial risk of serious harm from inadequate provision of medical treatment for his many physical conditions or mental health issues.

Plaintiff also alleges that Quiros transferred him from one DOC facility that was ADA non-compliant to another ADA non-compliant facility.  But no allegations support an inference that Quiros was aware that Plaintiff was subject to a substantial risk of harm in a non-ADA-compliant facility.

Accordingly, Plaintiff's Eighth Amendment claims against Commissioner Quiros arising from his lack of ADA-compliant conditions and inadequate provision of treatment for his physical conditions and mental health needs must be dismissed as not plausible.

### ADA Coordinator Gallagher

As for ADA Coordinator Gallagher, Plaintiff has alleged for initial pleading purposes sufficient facts to suggest that she was aware of his need for ADA-compliant housing conditions but ignored his risk of serious harm.  Accordingly, Plaintiff may proceed on his Eighth Amendment claim against Gallagher in her individual capacity for damages for failure to provide ADA-compliant conditions.  *See Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 411–13 (S.D.N.Y. 2006) (citing *United States v. Georgia*, 546 U.S. 151 (2006)) (conduct that violates Title II of the ADA is sufficient to state an Eighth Amendment claim against a prison official in their individual capacity).

Plaintiff has not otherwise alleged facts to support a claim that Gallagher acted with deliberate indifference to any other substantial risk of serious harm to his medical needs or health and safety.

First Amendment Free Exercise

Inmates "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). In the prison context, alleged violations of the right to free exercise are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349. Thus, for a prisoner's claim of First Amendment free exercise deprivation, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers . . . legitimate penological objective[s]." *Kravitz*, 87 F.4th at 128 (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)). So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction does not violate the First Amendment. *Turner v. Safely*, 482 U.S. 78, 89 (1987).

The Second Circuit has confirmed that a defendant's isolated acts of negligence do not violate an individual's free exercise of religion. *Wiggins v. Griffin*, 86 F.4th 987, 997 (2d Cir. 2023). Instead, a plaintiff must adduce evidence sufficient to raise an inference that a defendant acted with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice. *Id.*; *see also Kravitz*, 87 F.4th at 129.

As previously discussed, the Court considers Plaintiff's Amended Complaint sufficient at this early stage to suggest Commissioner Quiros's involvement in decisions concerning discontinuation of Plaintiff's special diet. Accordingly, the Court will permit Plaintiff to proceed

against Commissioner Quiros in his individual capacity on a claim of First Amendment Free Exercise violation for failing to provide him with the special diet required for his religious needs.

No facts support a claim that ADA Coordinator Gallagher had any involvement in Plaintiff's failure to receive the appropriate religious diet.  Nor do any allegations suggest that either Quiros or Gallagher had any involvement in Plaintiff's inability to access religious items while housed in the RHU at Corrigan and MWCI, or in any other free exercise deprivation.  Such claims of First Amendment free exercise violations against Commissioner Quiros and ADA Coordinator Gallagher are dismissed as not plausible.

<u>First Amendment Retaliation</u>

For a First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quotations omitted).

To constitute "adverse action," conduct must be of the "type that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (citation omitted).  Thus, in the context of an inmate's claim of adverse action, the court considers "that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Id.* (citation omitted).

To satisfy the causation requirement, an inmate's allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Davis*, 320 F.3d at 354 (citation omitted).  Courts must approach prisoner retaliation claims with "skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—

14

even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis*, 320 F.3d at 352). Moreover, "claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated." *Dawes*, 239 F.3d at 491. For these reasons, the Second Circuit requires that prisoner retaliation claims be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotation marks omitted).

Plaintiff alleges in wholly conclusory terms that he was subject to retaliatory adverse action for filing complaints. The Court construes the Amended Complaint to assert that he was subjected to multiple instances of adverse treatment, including denial of access to necessary medications; denial of accommodations, equipment, and devices for his disabilities; denial of mental health treatment; and discontinuation of his medical diet. Even if Plaintiff can satisfy the first two elements of a First Amendment retaliation, no "specific and detailed" factual allegations support an inference that Plaintiff's protected activity played a role in Commissioner Quiros's or ADA Coordinator Gallagher's actions to subject him to such adverse treatment. Accordingly, the Court must dismiss Plaintiff's First Amendment retaliation claims against Gallagher and Quiros.

<u>Fourteenth Amendment Equal Protection</u>

To state an equal protection claim, Plaintiff must allege facts showing that: (1) he has been treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted). A plaintiff may also bring a "class of one" equal protection claim where the plaintiff alleges that he was

intentionally treated differently from others similarly situated without a "rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To succeed on a class of one claim, a plaintiff must demonstrate the existence of a person who is "*prima facie* identical" to him and who was treated differently.  *Conquistador v. Corcella*, No. 3:22-CV-992 (JAM), 2023 WL 3006806, at*2 (D. Conn. Apr. 19, 2023) (quoting *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019)).

Plaintiff's allegations suggest he asserts an equal protection claim arising from the failure to provide him with the special or kosher diet for his religious needs.  He alleges that he is being treated differently from another Jewish inmate who was provided with a special diet for his religious needs, and that he is treated differently from inmates of other religious affiliations who are provided special food to meet their religious needs.  For purposes of initial review, Plaintiff's allegations concerning disparate treatment relevant to provision of a diet for his religious needs are sufficient to proceed for damages against Commissioner Quiros for a violation of the Fourteenth Amendment Equal Protection Clause based on his religion and as class of one.  Plaintiff has not, however, alleged facts to reflect that ADA Gallagher was involved with any disparate treatment with regard to his dietary needs.

To the extent he claims that he was subject to an equal protection violation on the basis of his disabilities, Plaintiff must show that there was no rational relationship between the disparity of treatment and some legitimate governmental purpose.  *Koram v. CT Dept of Corr.*, No. 3:23-CV-729 (KAD), 2023 WL 8653979, at *3 (D. Conn. Dec. 14, 2023) (disability is not a protected class under the Equal Protection Clause).  Plaintiff has not alleged any facts to raise an inference that he is being treated differently from any comparators with respect to his disabilities without a rational reason.

Plaintiff's Amended Complaint also suggests that he is asserting an equal protection violation on the basis of being subjected to "dehumanizing prison conditions from 2020 to 2024" and being denied mental health medication and medication necessary for his disabilities. Am. Compl., ECF No. 22, ¶¶ 112–13. Such allegations do not state a plausible Fourteenth Amendment equal protection claims because they are wholly conclusory. He has not alleged any sufficient facts to suggest that a named defendant subjected him to such mistreatment because of any class-based impermissible consideration or that he was treated differently without a rational basis as a class of one with respect to these alleged deprivations.

### Official Capacity Claims[4]

When a party sues a state official in his or her official capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *Ex parte Young*, 209 U.S. 123, 155–56 (1908). Thus, a plaintiff may sue a state official acting in an official capacity for prospective injunctive relief from continuing violations of federal law. *See In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371–72 (2d Cir. 2005). But the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Plaintiff's Amended Complaint seeks unspecified injunctive relief.

---

[4] Any claims based on constitutional violations for money damages against the state employee Defendants in their official capacities—including Commissioner Quiros and ADA Coordinator Colleen Gallagher—are not plausible because they are barred by the Eleventh Amendment. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Any prospective relief regarding prison conditions must be "narrowly drawn, extend[] no further than necessary to correct the violation of a federal right, and [be] the least intrusive means necessary to correct the violation." *Brown v. Plata*, 563 U.S. 493, 530 (2011) (citing 18 U.S.C. § 3626(a)). In a prisoner case, a court should not enter "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.* at 531; *Abernathy v. Comm'r of Corr.*, No. 3:20-CV-628 (VAB), 2020 WL 5097566, at *3 (D. Conn. Aug. 28, 2020) ("[I]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." (cleaned up). Further, a claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation. *See Scozzari v. Santiago*, No. 3:19-CV-229 (JAM), 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019). However, personal involvement in the alleged constitutional violation is not a prerequisite to official capacity claims for injunctive relief. *See Hamilton v. Deputy Warden*, No. 15-CV-4031 (KBF), 2016 WL 6068196, at *13 (S.D.N.Y. Oct. 13, 2016).

Although it is not entirely clear, Plaintiff's Amended Complaint suggests that he is still being deprived of necessary assistive devices for his disabilities. Construing the Amended Complaint most favorably to Plaintiff, the Court will permit him to proceed with a claim for official-capacity relief to remedy any ongoing Eighth Amendment deliberate indifference violations for his substantial risk of serious harm absent assistive devices and/or equipment. This Eighth Amendment official-capacity claim may proceed against Quiros and Gallagher.

Plaintiff's Amended Complaint may also be construed as asserting a claim for injunctive relief for him to be provided with his special diet to remedy his ongoing Eighth Amendment deliberate indifference violation, First Amendment free exercise violation, and Fourteenth

18

Amendment equal protection violation.   In addition, under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, Plaintiff may seek injunctive relief but must demonstrate a "substantial burden" on his religious exercise.  *Antrobus v. New York City*, No. 23-CV-7038 (LTS), 2023 WL 6609443, at *2 (S.D.N.Y. Oct. 10, 2023) (under RLUIPA, government may not "substantial[ly] burden" an institutionalized person's religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means); *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (noting that RLUIPA allows for injunctive relief—but not money damages claims—against state officers).[5]   Accordingly, Plaintiff may proceed against Commissioner Quiros on official-capacity claims for injunctive relief to remedy ongoing violation of his rights under the First Amendment Free Exercise Clause, Fourth Amendment Equal Protection Clause, and RLUIPA.

Americans with Disabilities Act and Rehabilitation Act

Plaintiff alleges noncompliance with the ADA and RA.[6]

To establish a *prima facie* violation under Title II of the ADA or the RA, a plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are] entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [defendants'] services, programs, or activities or [defendants] otherwise discriminated against him by reason of

---

[5] RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (quoting 42 U.S.C. § 2000cc-1(a)).

[6] The only difference between the ADA and RA is that the RA applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities.  *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together).  The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'"  *Wright*, 831 F.3d at 72 (quoting *Henrietta D*., 331 F.3d at 272).  For purposes of initial review, the Court assumes that the DOJ, DOC, and DRCT are covered entities by both statutes.

his disability." *Wright v. N.Y.S. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). There are "three available theories[]" of discrimination that can be used to establish the third prong of an ADA and RA claim: "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).[7]

On prior initial review, the Court dismissed Plaintiff's ADA and RA claims arising from inadequate medical treatment because his allegations failed to reflect that he was deprived of access to DOC's services or programs because of his physical disability, or that he was treated differently or discriminated against because of his disability by the DRCT Defendants, the DOJ, or the CHRO. *See* IRO at 17; *see also Elbert v. N.Y.S. Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability."); *Henrietta D.*, 331 F.3d at 277 ("[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation."). To the extent Plaintiff now again seeks relief under the ADA and RA for denial of medical or mental health treatment, Plaintiff has not alleged plausible ADA or RA violations for the same reason.

Plaintiff's allegations are sparse but suggest that he has been denied reasonable accommodations of ADA-compliant conditions and assistive devices to facilitate his engagement in major life activities. Under Title II, disabled individuals cannot be excluded from or denied the benefits of the public entity's services, programs, or activities because the entity's "facilities are

---

[7] On prior initial review, the Court dismissed with prejudice any ADA and RA claims against the individual defendants sued in their individual capacities because Title II of the ADA and § 504 of the Rehabilitation Act do not provide for individual-capacity suits. *Avila v. Promesa, Inc.*, No. 24-CV-1689 (LTS), 2024 WL 2747822, at *3 (S.D.N.Y. May 22, 2024). The Second Circuit has indicated that damages may be available against a state entity under Title II in certain circumstances. *Sanchez v. Butricks*, No. 22-2923, 2024 WL 2890742, at *3 (2d Cir. June 10, 2024).

inaccessible to or unusable by individuals with disabilities." 28 C.F.R. § 35.149. A "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion," and a public entity must "take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2009). A prison's provision of appropriately accessible toilet facilities may constitute a "service, program, or activity" within the meaning of the ADA. *See Dunmore v. Shicker*, No. 3:16-CV-171 (MAB), 2020 WL 65057, at *13 (S.D. Ill. Jan. 7, 2020) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)). Accordingly, the Court will permit Plaintiff to proceed on his claims against the DOC, Quiros, and Gallagher (in their official capacities) to determine on a fuller record whether Plaintiff is a qualified individual entitled to relief under the ADA and RA.

Plaintiff's Amended Complaint otherwise fails to raise any other plausible claims of ADA and RA violations arising from discriminatory treatment because of his disability against the DOC, DOJ, or DRCT (or any of the individual Defendants in their official capacities).

## ORDERS

For the foregoing reasons, the Court enters the following orders:

(1) Plaintiff may proceed on (1) an Eighth Amendment claim for deliberate indifference to medical needs for failing to provide a special diet against Commissioner Quiros in his individual and official capacities; (2) an Eighth Amendment claim for deliberate indifference to Plaintiff's need for ADA-compliant housing conditions and assistive devices against ADA Coordinator Gallagher in her individual and official capacities and against Commissioner Quiros in his official capacity; (3) a First Amendment Free Exercise violation against Commissioner Quiros in his individual and official capacities; (4) an RLUIPA violation against Commissioner Quiros in his official capacity; (5) a Fourteenth Amendment equal protection violation against Commissioner

Quiros in his individual and official capacities; and (6) ADA and RA violations against the DOC, and against Commissioner Quiros and ADA Coordinator Gallagher in their official capacities.

All other claims are DISMISSED with prejudice as not plausible.  The Clerk of Court is instructed to terminate the following Defendants: DOC Staff Attorney Jennifer Lepore, United States DOJ Civil Rights Division/Local Office, United States Attorney Roberts Avery, Assistant United States Attorney King, Assistant United States Attorney Patel, the DRCT, DRCT Director Dorfman, and DRCT Attorney Byers.

(2) The Clerk shall verify the current work addresses for Commissioner Quiros and ADA Coordinator Gallagher with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Amended Complaint (ECF No. 22) to them at their confirmed addresses on or before **May 16, 2025**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) **By May 6, 2025,** the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshals Service.  The U.S. Marshals Service shall serve the summons, a copy of the Amended Complaint, and a copy of this Order on the DOC, on Commissioner Quiros, and on ADA Coordinator Gallagher in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06160.

(4) The Clerk shall send a courtesy copy of the Amended Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendants shall file their response to the Amended Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If a Defendant chooses to file an answer, the Defendant shall admit or deny the allegations and respond to the cognizable claims recited above.  The Defendant may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **November 28, 2025**.  Discovery requests **shall not** be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court.  The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **December 29, 2025**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c) provides that he MUST notify the Court.  **Failure to do so may result in the dismissal of the case**.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendants or defense counsel of his new address.

(11) Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court.  Plaintiff is advised that the Program may be used only to file documents with the Court.

Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R.

5(f).  Therefore, discovery requests must be served on Defendants' counsel by regular mail.

 **SO ORDERED** at Bridgeport, Connecticut, this 29th day of April, 2025.


    _/s/ Kari A. Dooley_
    KARI A. DOOLEY
    UNITED STATES DISTRICT JUDGE